Slip Op. 17-82

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AN GIANG FISHERIES IMPORT AND EXPORT JOINT STOCK COMPANY ET AL., | |
| **Plaintiffs and Consolidated Plaintiffs,** | |
| **and** | |
| VIETNAM ASSOCIATION OF SEAFOOD EXPORTERS AND PRODUCERS ET AL., | |
| **Plaintiff-Intervenor and Consolidated Plaintiff-Intervenors,** | Before: Claire R. Kelly, Judge |
| **v.** | Consol. Court No. 14-00109 |
| UNITED STATES, | |
| **Defendant,** | |
| **and** | |
| CATFISH FARMERS OF AMERICA ET AL., | |
| **Defendant-Intervenor and Consolidated Defendant-Intervenors.** | |

## OPINION AND ORDER

[Sustaining in part and remanding in part the U.S. Department of Commerce's remand redetermination in the ninth antidumping duty administrative review of certain frozen fish fillets from the Socialist Republic of Vietnam.]

Dated: July 10, 2017

Matthew Jon McConkey, Mayer Brown LLP, of Washington, DC, for Plaintiffs, Consolidated Plaintiff-Intervenor, and Consolidated Defendant-Intervenor An Giang Fisheries Import and Export Joint Stock Company et al.

Nazakhtar Nikakhtar and Jonathan Mario Zielinski, Cassidy Levy Kent (USA) LLP, of Washington, DC, for Consolidated Plaintiffs, Defendant-Intervenors, and Consolidated Defendant-Intervenors Catfish Farmers of America et al.

John Joseph Kenkel, deKieffer & Horgan PLLC, of Washington, DC, for Consolidated Plaintiff Binh An Seafood Joint Stock Company.

Andrew Brehm Schroth, Andrew Thomas Schutz, Dharmendra Narain Choudhary, and Ned Herman Marshak, Grunfeld Desiderio Lebowitz Silverman & Klestadt LLP, of New York, NY and Washington, DC, for Consolidated Plaintiff, Plaintiff-Intervenor, and Consolidated Defendant-Intervenor Vietnam Association of Seafood Exporters and Producers.

Kara Marie Westercamp, Trial Attorney, U.S. Department of Justice, Commercial Litigation Branch – Civil Division, of Washington, DC, for defendant.  With her on the brief were Chad A. Readler, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director.  Of counsel on the brief was David W. Richardson, Senior Attorney, U.S. Department of Commerce, Office of the Chief Counsel for Trade Enforcement and Compliance, of Washington, DC.

Kelly, Judge:  Before the court for review is the U.S. Department of Commerce's ("Department" or "Commerce") Final Results of Redetermination Pursuant to An Giang Fisheries Import and Export Joint Stock Company et al. v. United States, Consol. Court No. 14-00109, Slip Op. 16-55 (June 7, 2016) filed pursuant to the court's decision in An Giang Fisheries Import and Export Joint Stock Company v. United States, 40 CIT __, 179 F. Supp. 3d 1256 (2016).  See Final Results of Redetermination Pursuant to An Giang Fisheries Import and Export Joint Stock Company et al. v. United States, Consol. Court No. 14-00109, Slip Op. 16-55 (June 7, 2016), Feb. 10, 2017, ECF No. 151-1 ("Remand Results"); see also An Giang Fisheries Import and Export Joint Stock Company v. United States, 40 CIT __, 179 F. Supp. 3d 1256 (2016).  The court remanded Commerce's Final Results in the ninth antidumping duty ("ADD") administrative review of certain frozen fish fillets from the Socialist Republic of Vietnam ("Vietnam") to further explain or reconsider

its selection of data to calculate a surrogate value ("SV") of respondents' rice husk factor

of production ("FOP") and Commerce's decision to construct a value for respondent Vinh

Hoan Corporation's ("Vinh Hoan") fish oil byproduct rather than selecting the best SV data

for fish oil placed on the record.  See An Giang, 40 CIT at __, 179 F.Supp. 3d at 1262;

see generally Certain Frozen Fish Fillets From the Socialist Republic of Vietnam, 79 Fed.

Reg. 19,053 (Dep't Commerce Apr. 7, 2014) (final results of ADD administrative review

and new shipper review; 2011–2012) ("Final Results"), as amended 79 Fed. Reg. 37,714

(Dep't Commerce July 2, 2014) and accompanying Certain Frozen Fish Fillets from the

Socialist Republic of Vietnam: Issues and Decision Memorandum for the Final Results of

the Ninth Administrative Review and Aligned New Shipper Review, Aug. 5, 2014, ECF

No. 29-3 ("Final Decision Memo").  The court also remanded Commerce's normal value

("NV") calculation to permit Commerce to ensure that the export price and NV are stated

on a consistent basis.[1]  An Giang, 40 CIT at __, 179 F.Supp. 3d at 1262; see also Final

Decision Memo at 70–75.

On remand, Commerce changed its selection to value rice husk to the Indonesian

Central Bureau of Statistics ("ICBS") historic rice prices data in Indonesia.  Id. at 12–13.

On remand, Commerce also adjusted Vinh Hoan's U.S. sales database and FOP

---

[1] Commerce acknowledged that it was required to determine whether export price and NV should be based on net weight (i.e., unglazed weight) or gross weight (i.e., glazed weight).  See Final Decision Memo at 70.  Commerce likewise acknowledged that the U.S. price and normal value should be stated on a per-unit basis with consistent denominators.  See id.  Defendant requested that this issue be remanded to reconsider its calculation to ensure that the input consumption ratio was calculated on a consistent basis.  See Def.'s Resp. Consolidated Pls.' Rule 56.2 Mot. J. Upon Agency R. 92, July 29, 2015, ECF No. 76.  As the court explained in its decision remanding Commerce's determination, "[g]lazing of frozen fish refers to coating the finished fillet with water and then freezing it."  An Giang, 40 CIT at __, 179 F.Supp. 3d at 1262 n.3.

database to ensure that all data is reported on a net weight basis (i.e., exclusive of glazing). Id. at 18–19.  The court sustains both determinations because Commerce has complied with the court's remand instructions and no party challenges either decision.

Commerce also continued to construct a value for Vinh Hoan's fish oil byproduct based on a calculation of Vinh Hoan's data for inputs used to produce its fish oil while also continuing to maintain that it is using Indonesian import data for HTS 1504.20.9000. See Remand Results 14–17.  An Giang Fisheries Import and Export Joint Stock Company, Asia Commerce Fisheries Joint Stock Company, Cuu Long Fish Joint Stock Company, Hiep Thanh Seafood Joint Stock Company, International Development and Investment Company, QVD Food Company Ltd., Southern Fishery Industries Company, Ltd., and Vinh Hoan Corporation (collectively "Vinh Hoan") continue to challenge Commerce's decision to construct a value for fish oil as unsupported by substantial evidence. See Pl.'s Comments on Final Results of Redetermination Pursuant to Remand 4–8, Apr. 11, 2017, ECF No. 155 ("An Giang Remand Comments").  The court remands Commerce's determination because Commerce fails to explain why its decision to construct a value rather than choose the best available existing SV data source for fish oil is reasonable.

## BACKGROUND

The court generally presumes familiarity with the facts as discussed in An Giang. Nevertheless, the court briefly summarizes the facts relevant to its discussion here for ease of reference.  In its final determination, Commerce valued respondents' rice husk FOP using Indonesian import data under HTS 1213.00, covering "Cereal Straw and

Husks, Unprepared, Whether or Not Chopped, Ground, Pressed, or in the Form of Pellets." Final Decision Memo at 36. The court remanded Commerce's selection to value rice husk because Commerce failed to explain why the import data is specific, representative of a broad market average, and not aberrational. See An Giang, 40 CIT at __, 179 F. Supp. 3d at 1275–76. Second, in its Final Results, Commerce determined that the correct U.S. price to use for its margin calculations is "the gross unit price (*i.e.*, glazed weight basis and unglazed weight basis for those specific sales) recorded on the commercial invoice because this is the weight basis price that Vinh Hoan sold and was paid for the subject merchandise." Final Decision Memo at 71. The court granted Defendant's request for a remand for Commerce to reconsider its decision not to adjust Vinh Hoan's NV to exclude glazing weight from Vinh Hoan's FOP consumption calculations. See An Giang, 40 CIT __, 179 F. Supp. 3d at 1285.

Third, Commerce determined that, although Indonesian import data under HTS 1504.20.9000 is the best available information to value Vinh Hoan's fish oil byproduct in its final results, it should "cap" the price of fish oil at the calculated constructed value of the FOPs and ratios used by Vinh Hoan to make fish oil. See Final Decision Memo at 78–86. Commerce justified its constructed "cap" because Vinh Hoan reported producing only unrefined fish oil while the import data includes prices for both refined and unrefined fish oil. See id. at 81–83. The court explained that "Commerce's purported 'cap' is in fact a rejection of the import data in favor of a [constructed value]." An Giang, 40 CIT at __, 179 F. Supp. 3d at 1281–82. Therefore, the court remanded Commerce's determination for further consideration and explanation of why it is reasonable to depart from the normal

methodology of choosing the best existing SV data source by employing a constructed value to value fish oil.  See id., 40 CIT at __, 179 F. Supp. 3d at 1283.

In its remand redetermination, Commerce reopened the record to examine whether the rice husk SV is specific and non-aberrational.  Remand Results 5. Commerce continued to find that the import data under this category is specific to Vinh Hoan's rice husk input because the HTS heading names "cereal husks" as one the items covered by the heading.  Id. at 8.  However, Commerce found the Indonesian import data for HTS 1213.00 aberrational because the SV data derived from the import data is too high relative to data from the same HTS subcategory for other countries on Commerce's list of economically comparable countries.  Id. at 10–11.  On remand, Commerce selected Indonesian ICBS data to value rice husk because it found that the ICBS data and Indian import data equally satisfied its SV data selection criteria, but the ICBS data is from the primary surrogate country.  Id. at 12–13.  Further, Commerce reopened the record and requested Vinh Hoan to submit a revised U.S. sales database and revised FOP database on a net weight basis because Commerce found that Vinh Hoan reported U.S. sales as well as FOP consumption on a mixture of net weight and gross weight bases.  Id. at 18–19.  Finally, on remand, Commerce continued to construct a value for Vinh Hoan's fish oil byproduct derived from a build-up of FOPs used to produce fish oil.[2]  Id. at 14–15.

---

[2] Commerce noted that Vinh Hoan reported the FOPs it consumed during the production of fish oil.  Remand Results 16.  Commerce stated that "[t]he FOPs used to produce fish oil during the [period of review] were applied to [period of review]-specific SVs from the primary surrogate country, Indonesia," in Commerce's calculation of Vinh Hoan's normal value.  Id.  Commerce then added surrogate ratios for overhead, selling, general, and administrative expenses, and profit to

(footnote continued)

Commerce justified this determination by noting that the SV from the import data yielded a higher value than the whole live fish input used to make the subject merchandise.  Id. at 14.  Commerce considered this result unreasonable, and it attributed the anomaly to the fact that the import data on the record includes prices for refined fish oil while Commerce found that Vinh Hoan produced only unrefined fish oil.  Id. at 15.

These changes in Commerce's methodology on remand resulted in revised weighted-average dumping margin for mandatory respondent Vinh Hoan and for the separate respondents.  See id. at 30.  Vinh Hoan's margin changed to $0.00 per kilogram ("/kg"), and the rate assigned to the separate rate respondents changed to $1.20/kg.  Id. Anvifish Joint Stock Company's margin remained unchanged at $1.20/kg.  Id.

---

the value of materials used to produce Vinh Hoan's fish oil byproduct.  Id. at 16–17.  Commerce also adjusted for yield loss (i.e., the amount by weight of fish waste, which Commerce found to be the main input used to produce fish oil, that would be lost in the production of fish oil).  See id. at 27–28.

Commerce does not indicate that it changed its general calculation methodology from its Final Results on remand.  In the Final Results, Commerce calculated material costs for fish oil on a per-kilogram basis by multiplying a per-kilogram value for each FOP by a usage rate calculated based on Vinh Hoan's usage data and adding the per-kilogram costs of manufacture together to derive a cost of materials for fish oil.  See Final Results Final Analysis Memorandum for Vinh Hoan at Attach. I, CD 237, bar code 3192905-01 (Mar. 28, 2014).  Commerce then added a per-unit overhead cost to obtain a total per-kilogram manufacturing costs.  See id.  Commerce then multiplied the total per-kilogram manufacturing costs by the selling, general, and administrative expense ratio and added that product to the total manufacturing costs to obtain a constructed value for fish oil.  See id.  Lastly, Commerce added a profit ratio to obtain a fully-loaded constructed value.  Id.

On August 15, 2014, Defendant filed indices to the public and confidential administrative records for its final results, which identify the documents that comprise these administrative records, respectively.  Those indices can be located at ECF No. 29-1 at Attach. I.  All further references to documents from the administrative records to the final results are identified by the numbers assigned by Commerce in these administrative records.

## JURISDICTION AND STANDARD OF REVIEW

The court continues to have jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012),[3] and 28 U.S.C. § 1581(c) (2012), which grant the court authority to review actions contesting the final determination in an administrative review of an antidumping duty order.  "The court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).  "The results of a redetermination pursuant to court remand are also reviewed 'for compliance with the court's remand order.'"  Xinjiamei Furniture (Zhangzhou) Co. v. United States, 38 CIT __, __, 968 F. Supp. 2d 1255, 1259 (2014) (quoting Nakornthai Strip Mill Public Co. v. United States, 32 CIT 1272, 1274, 587 F. Supp. 2d 1303, 1306).

## DISCUSSION

### I.  Rice Husk SV

In An Giang, the court held that Commerce's SV data selection is not supported by substantial evidence because Commerce failed to address certain detracting evidence concerning whether the Indonesian import data for HTS 1213.00 is aberrational, the data's specificity, and its representativeness of a broad market average.  An Giang, 40 CIT at __, 179 F. Supp. 3d at 1275.  On remand, Commerce declined to use Indonesian import data for HTS 1213.00 to value rice husk because it found Indonesian import data

---

[3] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

for HTS 1213.00 to be aberrational.  Id. at 10–11.  For the reasons that follow, Commerce has complied with the court's instructions and no party continues to argue that Commerce's selection of the best available information is unsupported by substantial evidence.

The court remanded for Commerce to further explain or reconsider its SV data selection for rice husk, a waste byproduct of rice, given that no record evidence suggests that rice husk can trade for more than rice.  Id.  On remand, Commerce placed historical Indonesian import data for HTS 1213.00 and import data from other countries on its surrogate country list on the record.  Id.  On remand, Commerce revisited the Indonesian import data for HTS 1213.00 and concluded that the Indonesian import data for HTS 1213.00 used in its Final Results is aberrational.[4]  See id. at 10.  Commerce selected Indonesian ICBS data as the best available information because the data is representative of a broad market average, publicly available, tax and data exclusive, contemporaneous, reliable.  Id.

Although Commerce found that Indian import data for HTS 1213.00 and Indonesian ICBS data equally meet its SV data selection criteria, Commerce preferred the ICBS data because it is from the primary surrogate country.  See id. at 12. Commerce explained that it prefers to rely on factor costs from a single surrogate country because

---

[4] After comparing Indonesian data to data from other countries on Commerce's surrogate country list and to ICBS data placed on the record for the Remand Results, Commerce found the Indonesian average unit values ("AUV") in HTS 1213.00 to be much higher relative to the other benchmark data on the record for rice husk.  Remand Results 10–11.

doing so "better reflects the trade-off between labor costs and other factors' costs, including capital, based on their relative prices."  Id.

Commerce also determined that the two Bangladeshi price quotes on the record are not the best available information for valuing rice husk because they do not represent broad market averages, are not tax and duty exclusive, and Commerce could not confirm their reliability.[5]  See Remand Results 3–4.  Commerce decided that an Indonesian rice husk price quote from Pt. Vitafarm Indonesia is not the best available information citing its findings in its final determination that this price quote is not representative of a broad market average, not tax and duty exclusive.  Id. at 4 (citing Final Decision Memo at 42). Moreover, Commerce cited concerns regarding whether this price quote may have been self-selected from a larger group of price quotes because Commerce could not determine how the single transaction referenced in the price quote was generated.  Id. at 4–5.

No party continues to challenge Commerce's SV data selection to value rice husk. Commerce has complied with the court's remand order.  Therefore, Commerce's selection of Indonesian ICBS data to value rice husk is sustained.

---

[5] Specifically, Commerce noted that it found in its Final Results that the price quotes were not contemporaneous, not representative of broad market averages, and that the record does not demonstrate the quotes are tax and duty exclusive.  Remand Results 3 (citing Final Decision Memo at 41–42).  Commerce also found the SR Apparels quote is unreliable because there were inadequate facts on the record about the conditions under which the price quotes were solicited and whether they were self-selected from a broader range of quotes.  Id. at 3–4.  For the Seraph International price quote, Commerce determined that, although the quote is accompanied by an affidavit indicating how it was obtained, Commerce could not determine if the price quote is reliable.  See id. at 4.  Commerce cited concerns that the affidavit accompanying the Seraph quote indicates that Seraph had numerous discussions with various rice processors and rice husk traders, but only submitted one price quote.  Id.  Commerce also cited contradictory information as to whether Seraph produces and sells rice husks "because the hard copy printout from Seraph's website does not list rice or rice husk as one of the many agricultural products that Seraph offers for sale."  Id.

## II.  Recalculation of Vinh Hoan's Margins

The court remanded Commerce's margin calculations to allow it to ensure the calculations reflect values that are calculated on a consistent basis.  An Giang, 40 CIT at __, 179 F. Supp. 3d at 1285.

On remand, Commerce determined that it should recalculate Vinh Hoan's margin using a net weight denominator.[6]  Remand Results 17.  Commerce concluded it should use a net weight denominator because, although Vinh Hoan reported its U.S. sales database on a mixture of a net weight and gross weight basis, most of Vinh Hoan's sales were reported on a net weight basis.  See id. at 18.  Therefore, Commerce adjusted both the U.S. sales database and the FOP database to an exclusively net weight basis.  See id. at 18–19.  No party continues to question Commerce's determination, and Commerce has complied with the court's instructions by reasonably supporting its determination to adjust its margin calculations to ensure a uniform basis for comparison.  Therefore, the court sustains Commerce's revised margin calculation.

## III. Fish Oil CV

In An Giang, the court remanded for further explanation or reconsideration Commerce's decision to use a constructed value for Vinh Hoan's fish oil byproduct rather than any SV data source for fish oil on the record.  See An Giang, 40 CIT at __, 179 F. Supp. 3d at 1282.  The court held that, "[a]lthough Commerce purports to be following its practice of choosing the best SV data source, it has actually taken a different approach"

---

[6] Commerce explains that "net weight (or unglazed weight) is the weight of the frozen fish fillets only, whereas gross weight (or glazed weight) is the net weight of the frozen fish fillets with additional water added as glazing or ice."  Remand Results 17–18.

by constructing a value for fish oil that does not rely upon data from Indonesian import data HTS 1504.20.9000.[7]  Id., 40 CIT at __, 179 F. Supp. 3d at 1281–82.  Therefore, the court held that Commerce deviated from its stated practice without adequate explanation. Id., 40 CIT at __, 179 F. Supp. 3d at 1282.  Vinh Hoan argues that Commerce still fails to explain its use of a constructed value to value fish oil and, therefore, that Commerce's determination to use a constructed value is not supported by substantial evidence.  Pl.'s Comments on Final Results of Redetermination Pursuant to Remand 3–4, Apr. 11, 2017, ECF No. 155 ("Vinh Hoan Remand Comments").  Commerce still has not explained its deviation from its standard practice and construct a value in this case rather than choosing the best existing SV data source for fish oil from the alternative sources on the record. On remand, Commerce must explain why constructing a value from fish oil FOPs is the best available information versus existing alternative SV data on the record or for fish oil reconsider its determination.

      In NME cases, Commerce obtains a normal value by adding the value of the FOPs used to produce the subject merchandise and "an amount for general expenses and profit plus the cost of containers, coverings, and other expenses."  19 U.S.C. § 1677b(c)(1). Commerce values the FOPs "based on the best available information regarding the values of such factors in a market economy country or countries."  Id.  Commerce's methodology for selecting the best available information evaluates data sources based upon their: (1) specificity to the input; (2) tax and import duty exclusivity; (3)

---

[7] Thus, the court noted that "Commerce's explanation of why the HTS import data is superior to the other SV data sources on the record is . . . irrelevant to its calculation of a SV for Vinh Hoan's fish oil byproduct."  An Giang, 40 CIT at __, 179 F. Supp. 3d at 1283.

contemporaneity with the period of review; (4) representativeness of a broad market average; and (5) public availability.  Final Decision Memo at 13; <u>see also</u> Import Admin., U.S. Dep't Commerce, <u>Non-Market Economy Surrogate Country Selection Process</u>, Policy Bulletin 04.1 (2004), <u>available at</u> http://enforcement.trade.gov/policy/bull04-1.html (last visited July 5, 2017).  Commerce's practice for selecting the best available information to value individual FOPs favors selecting a data source that satisfies the breadth of its selection criteria where possible.  <u>See</u> Final Decision Memo at 13 (citing Fifth Administrative Review of Certain Frozen Warmwater Shrimp from the People's Republic of China: Issues and Decision Memorandum for the Final Results at 10, A-570-893, (Aug. 12, 2011), <u>available at</u> http://ia.ita.doc.gov/frn/summary/prc/2011-21259-1.pdf (last visited July 5, 2017)).  Commerce uses the same methodology to "offset production costs incurred by a respondent with the sale of by-products generated during the production process."  <u>See</u> Final Decision Memo at 34.  Although Commerce has discretion to decide what constitutes the best available information, <u>see</u> <u>QVD Food Co. v. United States</u>, 658 F.3d 1318, 1323 (Fed. Cir. 2011), Commerce must ground its selection of the best available information in the overall purpose of the AD statute, calculating accurate dumping margins.  <u>See</u> <u>CS Wind Vietnam Co., Ltd. v. United States</u>, 38 CIT __, __, 971 F. Supp. 2d 1271, 1277 (2014) (citing <u>Rhone Poulenc, Inc. v. United States</u>, 899 F.2d 1185, 1191 (Fed. Cir. 1990)).

        Commerce has not explained, or squarely acknowledged, its substitution of a constructed value methodology for a SV approach.  On remand, Commerce continued to affirm that Indonesian import data for HTS 1504.20.9000 is the best available information

because it found that the import data is the only SV source on the record that meets the

surrogate value criteria.[8]  See Remand Results 13.  Yet Commerce does not actually use

the import data for fish oil.[9]  Instead, it builds a constructed value for the fish oil using fish

oil FOPs and calls this value a "cap."  See id. at 17.  Commerce identified the FOPs used

to produce fish oil from Vinh Hoan's SV questionnaire responses.    Id. at 16–17.

Commerce described its calculation as applying "[t]he FOPs used to produce fish oil

during the [period of review]" to period-of-review-specific SVs.    Id.   Therefore, it is

apparent that Commerce selected SVs for the FOPs used to produce fish oil to construct

a SV for the byproduct rather than selecting actual SV data for fish oil on the record.

Because Commerce is not applying the calculated "capped" value to existing import data,

it is apparent that Commerce is simply substituting constructed value for a surrogate

value.[10]  See id.  Commerce cannot justify its decision to construct a value by relying on

the extent to which Indonesian import data for HTS 1504.20.9000 best satisfies its SV

---

[8] In contrast, Commerce found that none of the price quotes on the record are representative of a broad market average, contemporaneous, or tax and duty exclusive.  Remand Results 13–14.  Commerce found reliability concerns with some of the price quotes because the accompanying affidavits were not on official company letterhead and did not list the payment terms.  Id. at 14.  Furthermore, Commerce noted that for one price quote, the affidavit indicated that the sales were not typical of the company's business practices.  Id.

[9] As the court stated in An Giang, Commerce acknowledged that it constructed a value rather than relying upon data from the Indonesian HTS category.  An Giang, 40 CIT at __, 179 F. Supp. 3d at 1283 (citing Oral Arg. 02:14:50–02:15:05).  Moreover, there were no entries into Indonesia under HTS 1504.20.9000 during the period of review that were at or below the value than the $1.73 per kilogram constructed value derived from Vinh Hoan's data.  Id., 40 CIT at __, 179 F. Supp. 3d at 1283 n.42.  Commerce does refute these characterizations of its methodology on remand.

[10] Commerce describes its methodology as using the data that "Vinh Hoan reported . . . coupled with POR-specific SVs from the primary surrogate country and adjusted by surrogate ratios, to calculate a fully loaded unrefined fish oil SV."  Remand Results 24.

data selection criteria and then discard the import data for HTS 1504.20.9000. If Commerce is going to deviate from its practice of selecting the best SV data source for a particular FOP, it must acknowledge it is doing so and explain why it is reasonable to conclude that the constructed value for that FOP yields more accurate margins than the other SV data on the record for that FOP.[11] The court cannot assess the reasonableness of using a constructed value for fish oil when Commerce justifies that methodology by claiming it is something other than what it actually is.[12]

---

[11] Commerce has the power to use facts available when it lacks necessary information on the record. 19 U.S.C. § 1677e(a). However, it must explain why the information it does have is insufficient.

[12] Commerce argues that it has developed a practice of constructing a value for an FOP in past cases using the same methodology it used in this case where it concluded that the constructed value represented the best available information. Remand Results 24–25 (citing Clearon Corp. and Occidental Chemical Corp., et al. v. United States, Court of International Trade Consolidated Court No. 13-00073, Final Results of Redetermination Pursuant to Remand at 7–11, available at http://enforcement.trade.gov/remands/15-91.pdf (last visited July 5, 2017) ("Chloro Isos Remand"); Drill Pipe from the People's Republic of China: Issues and Decision Memorandum for the Final Determination at 26–29, A-570-965, (Jan. 3, 2011), available at http://ia.ita.doc.gov/frn/summary/prc/2011-390-1.pdf (last visited July 5, 2017) ("Drill Pipe from PRC I&D"). However, in neither case does Commerce purport to use import data for the input in question. In both cases, Commerce simply constructs a value using other SV data on the record. See Chloro Isos Remand at 8 (wherein Commerce calculated the byproduct offset by deducting any costs associated with converting ammonia gas and sulfuric acid into ammonium sulfate from the surrogate value of the downstream product (i.e., ammonium sulfate, not the byproducts in question, which were ammonia gas and sulfuric acid); Drill Pipe from PRC I&D at 28 (wherein Commerce acknowledged it constructed a value based upon SV data for the inputs applied to the components of tool joints from the selected surrogate country and not based upon SV data for tool joints). Commerce does not justify its use of a constructed value by claiming that it is using a SV for the input in question and merely capping that SV. See Chloro Isos Remand at 8, Drill Pipe from PRC I&D at 28. Moreover, in both these cases, Commerce found that the SV data for the input in question was not the best available information and determined that the constructed value was the best available information to value the input in question. See Chloro Isos Remand at 9–10; Drill Pipe from PRC I&D at 26–28. Here, Commerce concludes that import data for fish oil is the best available information to value fish oil and then proceeds to construct a value for fish oil based upon SV data for the inputs used to produce fish oil. See Remand Results 13, 17.

Further, labels aside, Commerce has not explained why a constructed value is a better choice than any of the other SV choices on the record.  It has only explained why the Indonesian import data for HTS 1504.20.9000 is better than any of the other choices on the record.   Commerce does state that using Vinh Hoan's own information in its production of fish oil "is necessarily the most representative, and specific, value."[13] Remand Results at 17.   However, Commerce has multiple factors that it considers in assessing the best available information.  See Policy Bulletin 04.1.  Although Commerce compares the extent to which the Indonesian import data for HTS 1504.20.9000 better satisfies its SV data selection criteria versus the five price quotes on the record, see Remand Results 13–14, this analysis is of no help to discerning why a constructed value of fish oil FOPs using import data is superior to the alternative SV data sources on the record for fish oil.  The constructed value does not use the import data for Indonesia HTS 1504.20.9000 in any way.   Therefore, Commerce cannot justify its determination to construct a value based on the superiority of HTS 1504.20.9000 Indonesian import data to price quotes on the record.  On remand, Commerce must explain why none of the SV data sources on the record lead to a reasonable value and otherwise explain why a constructed value is superior to the alternative SV data sources on the record or reconsider its determination.

---

[13] Commerce may indeed have good reason to conclude that using Indonesian HTS data would lead to an unreasonable value for Vinh Hoan's fish oil.  But it does not follow that, even if Vinh Hoan's fish oil is a low value-added product, the best alternative is to construct a value. Commerce continues to cling to the term "cap," which is at odds with Commerce's description of how it uses the Indonesian import data for fish oil.

Vinh Hoan also continues to object to Commerce's fish oil cap calculations.  See Vinh Hoan Remand Comments 8–9.  However, the court defers consideration of Vinh Hoan's arguments regarding the accuracy of Vinh Hoan's fish oil constructed value calculations until Commerce has adequately explained the reasonableness of its practice.

## CONCLUSION

The court sustains Commerce's SV data selection for rice husk.  The court also sustains Commerce's revision to the margin calculation for Vinh Hoan to ensure that both the NV and U.S. price are calculated on a net weight basis.  However, the court again remands Commerce's determination to construct a value for Vinh Hoan's fish oil byproduct.  Therefore, in accordance with the foregoing, it is hereby

**ORDERED** that Commerce's remand redeterminations regarding fish oil is remanded for further consideration consistent with this opinion; and it is further

**ORDERED** that Commerce shall file its second remand redetermination with the court within 60 days of this date; and it is further

**ORDERED** that the parties shall have 30 days thereafter to file comments on the second remand redetermination; and it is further

**ORDERED** that the parties shall have 15 days to file their replies to comments on the second remand redetermination.


                                                     /s/ Claire R. Kelly
                                                    Claire R. Kelly, Judge

Dated: July 10, 2017
           New York, New York